Mr. Justice Day
delivered the opinion of the Court.
Defendant below, Gerald G. Carson, appeals from a judgment awarding damages to plaintiffs below, Richard R. and Deloris M. Williams, in the amount of $2900 because of interference with water rights of the Williams.
Carson and Williams’ owned adjoining ranches and also water interests in the Carbon Ditch out of Ward Creek for irrigation of these ranches. The Carbon Ditch headgate was on Ward Creek, located northwest of the two ranches, from which point the ditch continued southwesterly to and across Carson’s ranch to the Williams’ land. Both parties owned reservoir water which could be turned into the Carbon Ditch out of Ward Creek, and they both also owned direct flow water by decree out of Ward Creek to the Carbon Ditch.
A dispute arose between the parties as to the Williams’ share of the cost of maintenance and repair of the Carbon Ditch. The Williams’ ranch being operated by lessees, the work had been done by, or under the supervision of, Carson in the absence of the Williams’, who resided in California. The dispute over sharing the maintenance and repair costs resulted in correspondence from Carson to the Williams’, and in particular letters written by Carson in 1963 and again in 1966 stating in essence that no water would run through the ditch until the Williams’ paid their share of the repair costs.
In January of 1967, Williams’ commenced suit against Carson alleging that in 1964, 1965 and 1966 Carson interfered with the delivery of and completely cut off through the Carbon Ditch the irrigation water to the Williams’ land. The issues presented are that the evidence supports neither the trial court finding that Carson *549 interfered with the delivery of water to plaintiffs’ land nor the award for damages. No error is assigned to the order of the trial court enjoining future interference. We affirm the findings and judgment of the trial court.
I.
Defendant Carson alleges first that inasmuch as there was no call to the water commissioner for water for the Williams’ land during the years for which interference was claimed (1964-66), the defendant could not have possibly interfered with the flow of water to the Williams’ ranch in any of these years. Further, Carson contends that the complaint was limited to the 1964-66 period and therefor the trial court erred, as a matter of law, in basing its findings upon interference as early as 1963; and lastly, there was no evidence to support the findings of interference in 1963, assuming that year was within the scope of the issues.
We are unable to perceive error in the findings of the trial court which read:
“That the subject property was leased for a three year term in 1963; that the said renters left after the first year because of the interference of the defendant with the flow of water * * * that, if the delivery of water was interfered with as it was in 1963, the law does not require a request for water if the renter has reasonable grounds to believe that the delivery thereof would be interfered with (the doing of a useless act).”
The finding of interference in 1963 is adequately supported by the record. In addition to the testimony regarding the tenants’ termination of their lease due to the interference by the defendant with the flow of water, a letter written to the Williams’ by Carson in November, 1963, contained the following language: “I only plan on making one cutting of hay next spring and when Im [sic] finished with the water I’ll [sic] jerk the weir out and let someone else put a weir in the ditch for a while and I’ll [sic] use it free — no problem there. * * *”
The evidence of interference as early as 1963 was *550 taken into consideration by the trial court to demonstrate that any attempt to obtain water in 1964-66 would have been futile, inasmuch as the defendant had indicated as early as 1963 that he would allow no additional water to flow through the ditch. Damages were not awarded for 1963.
The testimony as to interference during the years for which damages were claimed and granted, 1964-66, was considerable, and no purpose would be served by detailing it here. In brief review, however, there was testimony from former and prospective tenants that the defendant indicated he would not allow any water to flow to the Williams’ acreage through the ditch until the Williams’ paid for the maintenance and repair. Although he did allow water to flow for a short time in the spring of 1965, this was apparently only done as a favor to the tenant, and was soon stopped and never repeated. The attitude of the defendant throughout this period, as supported by the testimony of numerous disinterested witnesses is best reflected by language in a letter from Carson to Mr. Williams in 1966 and demanding payment of $361 as the Williams’ share or “not one drop of water runs in my ditch.” (Emphasis added.)
Interference with the flow of water for nonpayment of the costs of upkeep and maintenance of the ditch is allowable only where specifically authorized by statute. (See C.R.S. 1963, 31-14-4(3) allowing such stoppage in the case of formally incorporated ditch companies.) Otherwise the remedy for non-payment of the pro-rate share of ditch upkeep lies only in an action against the defaulting owner.
 We hold that the evidence adduced at the trial was sufficient to sustain the trial court’s findings of interference for the years 1964-66, and further that the evidence of interference in 1963 was sufficient to give the plaintiffs and their representatives reasonable grounds to believe that it would be useless to continue to request water. The law requires no one to perform acts that *551 would be vain or useless. Industrial Comm’n v. People, 86 Colo. 377, 281 P. 742. See also Denver Truck Exchange, Inc. v. Globe Indemnity Co., 162 Colo. 398, 426 P.2d 772.
II.
On the question of the amount of damages awarded by the trial court, it is the position of the defendant that the court was in error in deducting only $100 from the $3000 in compensatory damages prayed for by the plaintiffs. The portion of the findings of the trial court relevant to damages is as follows:
“That the plaintiff was damaged in the sum of $2,900.00 broken down as follows: Loss of $1,000.00 from rental in 1964, loss of $900.00 in rental for 1965 and loss of $1,000.00 in rental for 1966, or, to put it another way, loss in value of the property of approximately $2,900.00 because of lack of irrigation water and the resultant loss of hay cover and production of fruit * *
The argument by defendant that the court below should have taken into account other evidence in mitigation of damages is without merit. One item was the cost of rebuilding of the ditch in 1965. Damages were allowed to the defendant on his counterclaim for this particular expenditure. The judgment which can be used as a set-off is not challenged by either party in this writ of error. Carson further contended that the court failed to take into account some income that was received by one of the tenants during the period. There is no^ evidence that these moneys were received by or inured to the benefit of the Williams’ and so the court was correct in not charging it against them as mitigation of damages.
The judgment is affirmed.